### BEE LINE TRANSP. CO. v. CONNECTICUT FIRE INS. CO. OF HARTFORD.
#### No. 14110.

District Court, E. D. New York.
May 8, 1934.

Single, Atkins & Tyler, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle, of New York City, of counsel), for respondent.

BYERS, District Judge.

Hearing on exceptions to answer which pleads no defense, and puts libelant to its formal proof.

The libelant seeks to recover from the respondent the amount alleged to be due under

a marine insurance policy because of the following circumstances:

The libelant's tug Wyoming in November of 1927 was towing four vessels containing coal, including its own numbered barges 801 and 806; these two sank while the tow was en route to Woods Hole, from New London, when in the vicinity of Point Judith.

The circumstances appear in the case of The Wyoming (D. C.) 58 F.(2d) 789. The barges' seams opened, causing them to leak from pounding in heavy seas, with the result stated; the court found that the tug was at fault for proceeding with her voyage under the circumstances disclosed, and consequently she was held liable for the loss of the cargo.

The question for decision is whether, under the terms of the insurance policy issued by the respondent to the owner of the tug, recovery can be had for the liability so imposed.

The policy contains collision and tower's liability clauses as follows:

"And it is further agreed that if the vessel hereby insured, or her tow, shall come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause such other vessel or craft to strand and/or strike the ground or any substance or thing (other than water); and the assured shall in consequence thereof become liable to pay, and shall pay by way of damages, to any other person or persons any sum or' sums not exceeding in respect of any one such collision the value of the Vessel hereby insured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the vessel hereby insured. And in cases where the liability of the vessel has been contested, with the consent, in writing, of a majority of the underwriters on the hull and machinery (in amount), we will also pay a like proportion of the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of *Cross Liabilities,* as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the assured in consequence of such collision; *and it is further agreed that this policy shall also extend to and cover the said vessel's legal liability for any collision and/or grounding and/or stranding and/or loss or damage which may occur to any vessel or vessels or craft while in tow of said vessel, subject to all the terms and conditions of this clause.* It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the vessels and/or structures involved are the property in part or in whole of the same owners, all questions of responsibility and amount of liability as between such ships or vessels being left to the decision of a single arbitrator, if the parties can agree upon a single arbitrator, or failing such agreement, to the decision of arbitrators, one to be appointed by the managing owners of such vessels, and one to be appointed by the majority in amount of underwriters interested in each vessel; the two arbitrators chosen to choose a third arbitrator before entering upon the reference, and the decision of such single or of any two of such three arbitrators, appointed as above, to be final and binding.

"Provided always that this clause shall in no case extend to any sum which the assured may become liable to pay, or shall pay, for removal of obstructions under statutory powers, or for loss of life or personal injury." (Italics added for ready identification.)

Legal liability has been established as against the Wyoming, and the question is whether this policy covers it.

If the policy had provided that it was to "extend to and cover the said vessel's legal liability" without more, there could be no doubt that the respondent would be held; but that is not the form of the engagement. The quoted expression is followed by limitations upon the nature of the legal liability for which responsibility is assumed, namely, collision, grounding, stranding, and loss or damage to any vessel or craft while in tow of the vessel insured.

Nothing is said or suggested about legal liability for cargo, or to any other person.

Then follow the words "subject to all the terms and conditions of this clause." Just what this expression means, for present purposes, may not be entirely clear, but "this clause" can refer to nothing which precedes the semicolon which divides the provisions touching the liability of both vessels for collision damage, from that part of the contract which deals with the legal liability of the Wyoming.

To relate back that liability to earlier clauses in the paragraph having to do with the responsibility of the Wyoming to answer for collision on her own part or that of her

tow to any other person [i. e., a cargo owner, Marine Transit Corporation v. Northwestern Fire & M. Ins. Co. (C. C. A.) 67 F.(2d) 544] would be to construe the word "clause" to mean "paragraph." No authority is cited for so disregarding the choice of words employed by the parties to this contract.

Even if this were to be done, it is open to grave doubt that so important an undertaking would be found to reside in such an expression as "subject to all the terms," etc., which ordinarily are words of restriction rather than expansion.

If the parties had intended that the obligation to insure against legal liability of the tower was to be other than general in its reach, and apparently they did, and they still intended it to cover loss of cargo, i. e. damages paid to any other person, it was open to them to contract upon that basis. This decision is based upon their failure to do so.

If the foregoing is correct, it follows that the exceptions to the answer must be overruled.

Settle order.